IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-00104-01-CR-W-ODS |
| ) | |
| LLOYD L. ROACH, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Roach's Motion to Suppress Evidence (doc #24). For the reasons set forth below, it is recommended that this motion be denied.

## I. INTRODUCTION

A Criminal Complaint was filed against defendant Lloyd L. Roach on April 4, 2008. The complaint charges that defendant Roach, having been convicted of crimes punishable by imprisonment for terms exceeding one year, knowingly possessed a firearm loaded with three rounds of ammunition.

On April 14, 2008, the Grand Jury returned a one count indictment against defendant Roach. The indictment charges that on April 3, 2008, defendant Roach, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm.

On July 24, 2008, an evidentiary hearing was held on defendant's motion to suppress. Defendant Roach was represented by Assistant Federal Public Defender William J. Raymond. The Government was represented by Assistant United States Attorney Paul S. Becker. The Government called Officer James Vangilder of the Kansas City, Missouri Police Department as a witness. The defense called no witnesses to testify.

## II. FINDINGS OF FACT

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. On April 3, 2008, at approximately 9:45 p.m., Officer James Vangilder was conducting surveillance of a residence located on the northeast corner of 8th Street and Van Brunt that he knew to be involved with narcotics activity. (Tr. at 4) Officer Vangilder was parked about half a block to the west of that location on a one-way street going east. (Tr. at 4-5) Officer Vangilder was parked on the south side of the road. (Tr. at 5) Officer Vangilder parked behind a van so that he could peek around the side of the van and observe what was going on at 8th Street and Van Brunt without being seen from that intersection. (Tr. at 5) Officer Vangilder was using a set of binoculars. (Tr. at 5)

2. At approximately 9:47 p.m., Officer Vangilder saw somebody get into a vehicle that was parked on the street beside the residence under surveillance. (Tr. at 5, 16-17) While he had been conducting surveillance, Officer Vangilder had run a check on the license plate number of this vehicle and had found out it was registered to Lloyd Roach. (Tr. at 8) Officer Vangilder also ran Lloyd Roach's name through the computer and it showed that he had a suspended license.[1] (Tr. at 11) The vehicle was the last vehicle parked on 8th Street before Van Brunt. (Tr. at 6) There were no vehicles parked behind it to block Officer Vangilder's view. (Tr. at 6) Officer Vangilder observed the vehicle pull away from the curb without signaling. (Tr. at 5-6) Officer Vangilder testified that this is a violation of Kansas City, Missouri Ordinance 70-454(a). (Tr. at 6, 37)

3. While Officer Vangilder's police vehicle was equipped with a dash-cam video, the video did not catch the defendant leaving the curb without signaling. (Tr. at 6) The dash-cam is located just to the right side of the rearview mirror. (Tr. at 7) Officer Vangilder had to sit as far to the left in his seat as he could to see around the van parked in front of him. (Tr. at 5)

4. The vehicle drove eastbound on 8th Street. (Tr. at 6) Officer Vangilder followed the vehicle for approximately five blocks and conducted a traffic violation stop at Independence Avenue and Denver. (Tr. at 6, 38) Officer Vangilder has stopped people leaving the residence located at 8th Street and Van Brunt while conducting surveillance on other occasions. (Tr. at 18)

5. Officer Vangilder activated his emergency equipment as the vehicle was pulling into a Taco Bell parking lot. (Tr. at 9) Officer Vangilder testified that he thought he saw the driver make some motions that would indicate that he might be trying to hide something. (Tr. at 52-53) Officer Vangilder notified dispatch that he was conducting a traffic violation stop and requested a second car. (Tr. at 9) Officer Vangilder then approached the vehicle on the driver's side. (Tr. at 9) Officer Vangilder asked the driver for his driver's license. (Tr. at 9) The driver, Lloyd Roach, produced a state ID card. (Tr. at 9) Officer Vangilder then asked Roach if he had a driver's license and Roach replied no. (Tr. at 9)

6. It is a violation of law to drive without a valid driver's license. (Tr. at 10) Officer Vangilder testified that he has authority to arrest a person for driving without a

---

[1] In a report prepared by Officer Vangilder, Officer Vangilder wrote that after defendant Roach was arrested, a computer check revealed that he had a suspended Missouri driver's license. (Tr. at 31-34) Officer Vangilder testified that he ran Roach's name through the computer a second time in order to be thorough. (Tr. at 34)

2

license. (Tr. at 10) Officer Vangilder testified that when he encounters a person who is driving while suspended, he ordinarily arrests the driver. (Tr. at 11-12)

7. After his back-up arrived, Officer Vangilder asked defendant Roach to step out of the vehicle and arrested him for driving without a license. (Tr. at 10) Two females were also present in the vehicle. (Tr. at 11) The females were removed from the vehicle and the vehicle was searched incident to arrest. (Tr. at 11)

8. Officer Vangilder found a .25-caliber semi-automatic pistol between the driver's and passenger's seats. (Tr. at 11) No illegal or controlled substances were recovered from the vehicle. (Tr. at 53)

9. Officer Vangilder issued two traffic tickets to defendant Roach–one for failing to signal and one for driving while suspended. (Tr. at 11) Officer Vangilder testified that while a bond would have been set on these tickets when Roach arrived at the detention center, Roach was not allowed to post bond because the charge for felon in possession of a firearm took precedence over the traffic violation tickets.[2] (Tr. at 42)

10. The next morning, Defendant Roach was interviewed at the Kansas City, Missouri Police Department by Detective Blakemore. (Government's Ex. 2) The Suspect Statement provides in part:

    Q. Have you been advised that you have the right to remain silent, that any statement you make may be used against you as evidence in court, that you have the right to the presence of an attorney either retained by you or one appointed for you without cost, and that the attorney can be present while you are being questioned?

    A. Yes. *X LR*

    Q. Under these conditions are you willing to waive that right and make a statement relating to the felon in possession of a firearm knowing that it can be used against you in the event of a trial?

    A. Yes. *X LR*

    Q. Are you a convicted felon?

    A. Yes.

    * * *

    Q. Do you recall if you signaled when you pulled away from the curb?

    A. I don't remember. I'm sure I didn't. I didn't know you had to. Is that really

---

[2]The tickets, which were not available at the hearing, were attached as exhibits to the Suggestions in Support of Defendant's Motion to Suppress Evidence (doc #34) filed August 7, 2008. While personal recognizance bonds appear to have been prepared for the two tickets, the date listed is April 4, the day after Roach's arrest.

3

a law?

Q. How long was it before you got pulled over?

A. Immediately pretty much. It was probably within 4 or 5 blocks.

Q. In detail, describe what happened when you got pulled over last night.

A. We pulled over in Taco Bell and the officer came to the window and asked for my driver's license. I told him that I didn't have one. I gave him my state ID. He asked me to step out of the car. He put me in handcuffs and then he took Nicole and Effie out and put them in handcuffs and set them on the curb. Then they immediately started searching my car. They found the gun and that pretty much sums it up and they took me to jail.

Q. Do you have a driver's license?

A. No, I'm in the process of getting it back. All I do if [sic] file my papers through SATOP. I already did SATOP. All I had to do was file them.

* * *

Q. Do you own the gun that was located in your vehicle?

A. I don't.

Q. Describe the gun.

A. It's a .25 Raven automatic.

Q. Where did the officers find the gun?

A. Between the front seats. It was in a little leather holster.

Q. Did you put the gun there?

A. Yes.

Q. Who owns the weapon?

A. Steve Keener. He's a friend of a friend that was kind of hanging out with at the time. He went to jail last week and all of his stuff was still in my car.

* * *

Q. Was the gun loaded?

A. Yeah. There were like 3 bullets in the thing I think. That's what the officer said.

Q. Did you load the weapon?

4

A. No.

\* \* \*

Q. Were you aware that convicted felons are prohibited from possessing firearms and ammunition?

A. Yeah.

Q. So, why did you keep possession of the gun?

A. I was gonna take it to Steve's mother, with the rest of his stuff, but I haven't had the gas money to get up there yet. I don't know what her name is. I just know how to get there. It's in Grain Valley.

Q. How long have you had the gun now?

A. Maybe a week.

\* \* \*

Q. When was the last time you used any illegal narcotics?

A. Day before yesterday. I just did a little hit.

Q. Of meth?

A. Yes.

\* \* \*

Q. After you were arrested and placed into the wagon, did you and Nicole have any conversation about whose gun it was?

A. She asked me why didn't I tell her and I was like I didn't even think about it at the time. I told her that I would take responsibility for it though.

Q. Did you tell the wagon driver that the gun was yours?

A. Yes. And then the arresting officer I told also.

\* \* \*

(Government's Ex. 2)

### III. DISCUSSION

Defendant Roach seeks to suppress "all evidence obtained during the execution of a car check and arrest of Mr. Roach conducted on April 3, 2008." (Motion to Suppress Evidence at 1) In addition, defendant seeks the suppression of "any statements made as a result of the

5

unconstitutional stop and arrest of Mr. Roach." (Id.)  In support of his motion, defendant argues the initial stop of the vehicle was unlawful because "the officer stopped the vehicle simply because it was leaving a residence 'known for a high level of narcotics activity.'" (Id. at 4)  Defendant further argues that while Officer Vangilder claims that defendant failed to signal while pulling away from the curb, this claim is not supported by the dash-cam video.  (Id.)  In supplemental briefing, defendant argues that failing to signal while pulling away from a curb does not even constitute a traffic offense.  (Suggestions in Support of Defendant's Motion to Suppress Evidence at 4-5) Finally, defendant argues that Officer Vangilder did not have a right to search the vehicle after issuing defendant the two tickets.  (Motion to Suppress Evidence at 4-5)

The initial stop of defendant Roach's vehicle was lawful.  As the Eighth Circuit Court of Appeals has observed, "a traffic violation–however minor–creates probable cause to stop the driver of the vehicle."  United States v. Lyons, 486 F.3d 367, 371 (8th Cir. 2007); United States v. Gregory, 302 F.3d 805, 809 (8th Cir. 2002), cert. denied, 538 U.S. 992 (2003); United States v. Foley, 206 F.3d 802, 805 (8th Cir. 2000).  Prior to pulling the vehicle over, Officer Vangilder observed the vehicle pull away from the curb without signaling.[3]  (See Fact No. 2, supra)  Officer Vangilder testified that this is a violation of Kansas City, Missouri Ordinance 70-454(a).[4]  (Id.)  This traffic

---

[3] The fact that defendant's failure to signal was not caught on tape does not signify that it did not happen given that the dash-cam is located on the right side of the rearview mirror and Officer Vangilder had to sit as far to the left in his seat as he could to see around the van parked in front of him.  (See Fact No. 3, supra)  Further, in his statement, defendant admitted that he did not signal.  (See Fact No. 10, supra)

[4] Section 70-454 of the Code of Ordinances, City of Kansas City, Missouri, provides in part as follows:

> (a)     No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in section 70-451, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or more right or left upon a roadway, unless and until such movement can be made with reasonable safety.  No person shall so turn any vehicle without giving an appropriate signal in the manner provided in this division.
>
> * * *
>
> (d)     The signals provided for in section 70-455 [signals to be given by hand-and-arm

6

Case 4:08-cr-00104-BCW   Document 37   Filed 09/04/08   Page 6 of 9

violation provided probable cause to stop the vehicle.[5] The fact that Officer Vangilder might also have suspected that defendant Roach was engaged in illegal conduct given his presence at a residence known to be involved with narcotics does not invalidate the traffic stop. In United States v. Cummins, 920 F.2d 498 (8th Cir. 1990), cert. denied, 502 U.S. 962 (1991), the Eighth Circuit Court of Appeals found:

> In our view, this otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity. It is also our view that the stop remains valid even if the officer would have ignored the traffic violation but for his other suspicions.

Id. at 501. See also United States v. Herrera-Gonzalez, 474 F.3d 1105, 1109 (8th Cir. 2007)("the subjective intentions of the officer making the stop are irrelevant in determining the validity of the stop"); United States v. Coney, 456 F.3d 850, 855-56 (8th Cir. 2006)(officer had probable cause to conduct traffic stop when he observed minor traffic violation, even if traffic stop was pretext for other investigation).

After he was stopped, defendant Roach advised Officer Vangilder that he did not have a driver's license. (See Fact No. 5, supra) Officer Vangilder had learned earlier that Lloyd Roach, the owner of the vehicle, had a suspended license. (See Fact No. 2, supra) Officer Vangilder testified that he has authority to arrest a person for driving without a license and that when he encounters a person who is driving while suspended, he ordinarily arrests the driver. (See Fact No.

---

or signal lamps] shall be used to indicate an intention to turn, change lanes or **start from a parked position** ....

(emphasis added)

[5]"Even if the officer was mistaken in concluding that a traffic violation occurred, the stop does not violate the Fourth Amendment if the mistake was an 'objectively reasonable one.' ... United States v. Martin, 411 F.3d 998, 1001 (8th Cir. 2005)(noting that '[t]he determinative question is not whether [the defendant] actually violated the Motor Vehicle Code ... but whether an objectively reasonable police officer could have formed a reasonable suspicion that [the defendant] was committing a code violation')." United States v. Herrera-Gonzalez, 474 F.3d 1105, 1109 (8th Cir. 2007). The Court has no reason to doubt that Officer Vangilder was correct in his assessment that defendant Roach's failure to signal was a violation of Ordinance 70-454. However, even if Officer Vangilder was mistaken, given the wording of the ordinance, the Court finds Officer Vangilder's mistake to be objectively reasonable.

6, supra)  Defendant argues that Officer Vangilder had no authority to arrest him as he issued defendant citations and then released defendant on his own recognizance.  (Suggestions in Support of Defendant's Motion to Suppress Evidence at 7)  The evidence presented at the hearing does not support defendant's argument as defendant was not merely ticketed and then released on his own recognizance.  Rather, defendant was arrested for driving without a license.  (See Fact No. 7, supra)  As Officer Vangilder testified, while a bond would have been set on the tickets issued when Roach arrived at the detention center, Roach was not allowed to post bond because the charge for felon in possession of a firearm took precedence over the traffic violation tickets.  (See Fact No. 9, supra)

The Court finds that Officer Vangilder had probable cause to place defendant Roach under arrest.  The search of the vehicle which followed was permissible as a search incident to arrest.[6]  See New York v. Belton, 453 U.S. 454, 460 (1981)("we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile"); United States v. Ball, 499 F.3d 890, 896 (8th Cir. 2007)(same); United States v. Searcy, 181 F.3d 975, 979 (8th Cir. 1999)(after driver of vehicle admitted to officer that his license was suspended, driver was arrested and vehicle lawfully searched incident to arrest).  While Officer Vangilder was conducting the search incident to arrest, he discovered a semi-automatic pistol between the driver's and passenger's seats.  (See Fact No. 8, supra)  No constitutional violation took place.

Given the Court's finding that the initial stop of the vehicle, the subsequent arrest of

---

[6] Defendant's reliance on Knowles v. Iowa, 525 U.S. 113 (1998), for the proposition that when an officer stops a motorist for a traffic violation and issues a citation the officer is not authorized to conduct a full search of the car is not justified in this case.  In Knowles, the police officer issued Knowles a citation for speeding rather than arrest him.  Id. at 114.  Given that Knowles was not arrested, a search of his automobile incident to arrest was not appropriate.  However, in the case before this Court, defendant Roach was arrested as well as issued traffic citations.  Given Roach's arrest, a search incident to arrest was permissible.  See United States v. Chauncey, 420 F.3d 864, 872 (8th Cir. 2005)(defendant's offense of driving without license justified arrest and search incident to arrest), cert. denied, 547 U.S. 1009 (2006).  Accord Virginia v. Moore, 128 S.Ct. 1598 (2008) (officers justified in searching incident to arrest when they arrested motorist for driving with suspended license, even though under state law officers should have issued summons rather than made arrest).

8

defendant Roach and the search incident to arrest were proper, there is no basis for suppressing defendant's statement.

## IV. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Roach's Motion to Suppress Evidence (doc #24).

Counsel are reminded they have ten days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

*/s/ Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE